**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

AMANKAYA CARRANZA      *

     *

     *Plaintiff,*

     *

v.      Case No. 1:25-cv-3144-JMC

     *

**COUNTY COUNCIL FOR**
**HOWARD COUNTY, MARYLAND.**      *

     *Defendants*      *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Amankaya Carranza ("Plaintiff") initiated the present lawsuit on September 12, 2025, against her former employer, County Council for Howard County, Maryland. (ECF No. 1). The lawsuit arises from alleged disability discrimination. *Id.* Plaintiff asserts unlawful failure to accommodate in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. (the "ADA") and Md. Code Ann., State Gov't § 20-601, et seq. ("MFEPA" or "FEPA") (Count I)[1]; unlawful disability discrimination under the ADA (Count II); and unlawful retaliation violations of the Rehabilitation Act, 29 U.S.C. § 749(b) (Count III). (ECF No. 1). Presently before the Court is Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment. (ECF No. 14). The motion has been fully briefed (ECF Nos. 14, 15, 18) and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth herein, Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment (ECF No. 14) shall be GRANTED.

---

[1] Plaintiff does not cite to any statute under the Failure to Accommodate claim; however, from what the Court can discern from Plaintiff's Opposition, Plaintiff seeks redress for failure to accommodate under the ADA and MFEPA. *Compare* (ECF Nos. 1, ECF No. 15). Plaintiff does not make any indication that she seeks redress under MFEPA under Count II or Count III. Thus, the Court considers MFEPA only with respect to Count I.

## I.    BACKGROUND

Defendant employed Plaintiff as an administrative assistant since October 30, 2023.  (ECF

Nos. 1 at 2; 14-3 ).[2]  Defendant's job description for an administrative assistant's essential duties

included the following tasks:

> Provides senior technical level administrative support for the Executive Assistant (Board Administrator), Zoning Board, Board of Appeals, Board of License Commissioners, Alcoholic Beverage Hearing Board, and Hearing Examiner.

> Receives applications, petitions, reports, records and other materials and reviews same for completeness, accuracy and sufficiency for further processing and processes same; assembles additional data as necessary; maintains complex records.

> Researches submitted information for verification as needed; coordinates the collection of additional data related to pending applications/cases.

> Serves as an initial point of contact with the public and media to ascertain needs and assemble information or arrange a response to inquiries. Manages Public Information Act request. Investigates and follows up on citizen complaints and inquiries.

> Schedules meetings; and maintains schedules for Boards, Hearing Examiner, Executive Assistant and/or Council Administrator; prepares agendas; verifies proper notice of meetings.

> Sets up, monitors, records, streams, attends and provides staff/technical assistance for Council and board meetings as required, (including night meetings).

> Operates the Council Control Room for live multi-camera productions, Prepares, updates and maintains video graphics for streamed productions.

> Supports recordkeeping functions by maintaining case files, documentation of exhibits, logs, journals, files, other permanent legislative, council records, Decision and Orders of the Boards. Distributing documents upon request and posting online.

> Develops, updates, and maintains content for Council and/or Board social media / webpages, including conversion of audio recordings and video of meetings.

---

[2] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing located at the top of every electronically filed document. Where a document does not have an electronic filing stamp, the Court is referring to the page numbers at the bottom of the document.

Provides general secretarial support including; drafts and/or edits correspondence, resolutions, briefing. Decision and Orders, and other written materials for own, or members of the Council Office.

Processes forms, such as expense vouchers, travel approval, and other documents in accordance with County and Council policies.

Greets Council guests, answers telephone inquiries, and provides public information as directed.

Acts in back up capacity to the Executive Assistant in all Board functions or functions of payroll, ordering, accounting, enrolling legislation and other duties as assigned by the Council Administrator.

(ECF No. 14-4).

Plaintiff alleges she suffered an ankle injury on November 9, 2024, that required surgery. (ECF No. 1 at 2). On November 16, 2024, Plaintiff submitted Family and Medical Leave Act ("FMLA") paperwork to her supervisor, Ms. Kel Berg, and County Council Administrator Ms. Michelle Harrod.  (ECF No. 14-6). Plaintiff requested a Full-Time Absence from November 12, 2024, to December 2, 2024.  *Id.* at 2. In the supporting documentation from Plaintiff's doctor, the condition was estimated to be "life-long" with incapacity and treatment spanning from November 11, 2024 to January 7, 2025.  *Id.* at 5.  The doctor further indicated Plaintiff would not be able to sit, stand, walk, drive, bend, stoop, twist, or crouch for extended periods of time after surgery. *Id.* at 7. Defendant subsequently approved Plaintiff's FMLA request on November 21, 2024, and Plaintiff was permitted to take leave from November 19, 2024, to January 7, 2025.  (ECF No. 14-7).

After surgery, Plaintiff alleges she was unable to walk and suffered from extensive mobility challenges.  (ECF No. 1 at 2). Plaintiff asserts that she soon requested a telework accommodation during her recovery period.  *Id.* On November 26, 2024, Plaintiff forwarded an email to the Office of Human Resources (the "OHR") from Dr. Hoffler.  (ECF No. 14-9).  In that letter, Dr. Hoffler indicated, "[p]atient had surgery on 11/19/24 on her left ankle. Patient must be allowed to telework

3

from home starting 12/2/24–1/6/25. Will return to work on 1/7/25." *Id.*  Afterwards, Ms. Harrod emailed an OHR administrator indicating that Plaintiff's position "interacts with Board Members and the public. It is impossible to complete [all of her] job responsibilities.  ***Are we required to fulfill this accommodation?*** (ECF No. 14-10) (emphasis in original). Several more emails ensued, including another email from Ms. Harrod to OHR stating that "85% of the [Plaintiff's] tasks require in-person contact and an in-office presence in order for the Board's Office to succeed and run smoothly." (ECF No. 14-11).  On November 27, 2024, a senior administrative analysis in OHR emailed Plaintiff regarding a factual conflict between Dr. Hoffler's FMLA note and the medical note he sent in support of Plaintiff's subsequent telework request. (ECF No. 14-12). Specifically, Dr. Hoffler indicated that Plaintiff suffered "total incapacitation" on the FMLA documentation, and OHR sought clarification regarding her incapacitation status. *See id.* The OHR also indicated,

> Temporary requests for telework can be considered when the employee is not incapacitated, and the job duties lend themselves to telework. Supervisors determine the duties that can be performed remotely. Our understanding from your management team is that many of your duties require you to be in the office. Nevertheless, we will review your request along with additional information that is needed to make a determination with your department.

*Id.*

On December 13, 2024, the OHR followed up with Plaintiff and asked her to obtain additional forms from Dr. Hoffler so they could evaluate her telework request. (ECF No. 14-13). While the letter from Dr. Hoffler was pending, Ms. Harrod sent an email on Decmember 16, 2024, to OHR with suggestions of a few projects Plaintiff could perform remotely. (ECF No. 14-14). The email reiterated that the "office requires staff to be in person." *Id.* Additionally, Ms. Harrod noted that the suggested projects would require only forty work hours and therefore would not account for Plaintiff's FMLA leave period, which was over a month. *Id.* On December 17, 2024, the OHR received a letter from Dr. Hoffler indicating Plaintiff "is unfit to work in the current job"

4

and "will be unable to return to work as of 11/19/24-1/7/25." (ECF No. 14-15). Then, the OHR notified Plaintiff that,

> [t]he physician's note dated 12/17/2024 indicates you cannot work in any capacity until January 8th. We cannot allow you to work, even part time from home, with the doctor indicating you are 'unable to return to work' and 'unfit to work in the current job' from 11/19/2024 – 01/07/2025.

(ECF No. 14-16).

On January 2, 2025, Plaintiff submitted an additional FMLA request, which sought leave until February 10, 2025. (ECF No. 14-17). She also requested information from OHR regarding short term disability benefits. (ECF No. 14-18). On January 3, 2025, OHR responded to Plaintiff's short term disability benefits request, informing that because Plaintiff's injury and subsequent disability occurred before the start of her benefits election date, she would not be able to obtain them. (ECF No. 14-19). On January 9, 2025, Plaintiff emailed Ms. Harrod and OHR indicating that she was resigning from the position as an administrative assistant "due to ongoing health concerns resulting from [her] injury." (ECF No. 14-20). She stated, "[a]fter careful consideration and consultation with my healthcare team, I have come to the difficult decision that resigning is the best course of action for my health as I am unable to perform the physical demands of the current position." *Id.*

Plaintiff asserts in the Complaint that "Defendant refused to provide the accommodation or suggest any other alternative, despite it allowing other persons to work remotely." (ECF No. 1 at 2). Plaintiff contends she "could have performed the essential functions of her position with a reasonable accommodation, including through remote work as she could have been able to complete her duties from home without limitations caused by her motility issues. *Id.* at 4. Plaintiff does not describe any of the purported duties she could have performed from home. *See id.* She avers, "[i]nstead, Defendant demanded that Plaintiff continue to be placed on leave without pay."

*Id.* at 3. Plaintiff continues, "[f]eeling that she had no other choice and was being forced out of her position by Defendant, Plaintiff was constructively discharged and likewise resigned on or about January 9, 2025." *Id.* Thereafter, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and obtained a right to sue letter on September 19, 2025. *Id.*

## II.    LEGAL STANDARD

Defendant's Motion to Dismiss alternatively seeks Summary Judgment under Federal Rule of Civil Procedure 56. (ECF No. 12). Summary judgment "is a device to make possible the prompt disposition of controversies if in essence there is no real dispute as to the salient facts." *Blakely v. Wards*, 738 F.3d 607, 611 (4th Cir. 2013), *as amended* (Oct. 22, 2013). Summary judgment is improper when "the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 246-47 (4th Cir. 2002); *see also Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996) (noting that summary judgment generally requires "adequate time for discovery" (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986))).

All parties must be given some indication by the Court that it is treating a pleading filed in response to a complaint as one for summary judgment, "with the consequent right in the opposing party to file counter affidavits or pursue reasonable discovery." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). When the moving party styles its responsive motion as a motion for summary judgment, as is the case here, and attaches additional materials to its motion, the non-moving party is considered notified, and the Court may treat the motion as one for summary judgment. *See Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).

"Ordinarily, summary judgment is inappropriate where the parties have not had an opportunity for reasonable discovery." *Id.*; *see also Sol v. M&T Bank*, No. 8:22-CV-02999-AAQ,

2024 WL 327086, at *4 (D. Md. Jan. 29, 2024) (collecting cases).   Under such circumstances, it may be that the filing of such a motion "forces the non-moving party into a fencing match without a sword or a mask." *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014). "Generally, if a party believes that summary judgment is procedurally inappropriate because the party needs discovery to properly oppose the motion, the party should file a Rule 56(d) affidavit informing the court of such." *Sol*, 2024 WL 327086, at *4. However, "'[e]ven in the absence of a Rule 56(d) affidavit,' a judge maintains 'complete discretion' to decline to convert a motion to dismiss to one for summary judgment." *Id.* (quoting *Woodbury v. Victory Van Lines*, 286 F. Supp. 3d 685, 693 (D. Md. 2017)).  Plaintiff has not filed a Rule 56(d) affidavit or indicated what additional documents, if any, she seeks to review during discovery.

In light of the documents provided, the Court does not find that accepting Defendant's motion as a motion for summary judgment is premature at this time; it cannot be said that Plaintiff is forced into a fencing match without a sword or mask.  *McCray*, 741 F.3d at 483.   The notice requirement is satisfied by the title of Defendant's motion, and Plaintiff does not argue that discovery is necessary to resolve the present motion—or even the instant litigation.  *See Morris v. Carvajal*, Civil Action No.: TDC-20-2420, 2021 WL 1928419, at *1 (D. Md. May 13, 2021) (finding sufficient notice by way of a defendant's motion title and considering that the plaintiff did not argue discovery was necessary to resolve the motion). Both parties attached emails, affidavits, photos, and other evidence of Plaintiff's job description and responsibilities to their filings. (ECF Nos. 14-3—14-22; 15-2—15-6; 18-1—18-2).   The record contains numerous documents and photos shedding light on the critical details of Plaintiff's job description; email correspondence relating to how exactly the Defendant processed her accommodation requests; affidavits pertaining to the actions Plaintiff and Defendant's employees took regarding her accommodation request;

and FMLA leave documentation. Moreover, several of these documents are not of the type that could typically be considered without converting a motion to dismiss into a motion for summary judgment. *Shields v. Verizon Md., LLC*, No. 1:23-CV-02932-JMC, 2024 WL 1050996, at *4 (D. Md. Mar. 11, 2024) ( "Those limited circumstances are matters of public record, documents explicitly incorporated into a complaint by reference or attached to the complaint as exhibits, or any document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity.").

Accordingly, Rule 56 requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)).

The Court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)). However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck Rental, Inc.*, 962 F. Supp. 2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). Consequently, a party cannot

create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998).

### III.     ANALYSIS

#### A.     The Court Declines to Consider Plaintiff's Wheelchair Allegation Set Forth for the First Time in her Opposition Motion.

As an initial matter, the Motion to Dismiss memoranda raise a concern regarding an un-pled allegation referenced in Plaintiff's affidavit. (ECF No. 15-4). Although the complaint makes reference only to one requested accommodation (telework) in addition to FMLA leave, Plaintiff indicates for the first time in her Opposition Motion that she requested a wheelchair as an alternative accommodation. *Id.* at 2. She continues, "Defendant claimed that it did not have the ability to accommodate the use of a wheelchair in Plaintiff's department." *Id.* Plaintiff relies on her affidavit in support of her new failure to accommodate issue. (ECF No. 15 at 8).

In the Fourth Circuit, a plaintiff is "bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint." *Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997), *aff'd*, 141 F.3d 1162 (4th Cir. 1998). Indeed, many courts disregard a plaintiff's attempt to raise new claims for the first time in its opposition memorandum at the motion to dismiss stage. *E.g.*, *Burroughs v. Dorsey Run Corr.*, Civil Action No. GLR-23-1223, 2024 WL 3832346, at *1 n.4 (D. Md. Aug. 15, 2024) (holding a plaintiff to the allegations in its complaint when construing a motion to dismiss as a motion as a motion for summary judgment); *see also Mylan Labs., Inc. v. Akzo*, 770 F. Supp. 1053, 1068 (D. Md. 1991) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)

*abrogated by Schmees v. HC1.Com, Inc.*,[3] 77 F.4ᵗʰ 483, 489 (7th Cir. 2023))), *aff'd*, 2 F.3d 56 (4th Cir. 1993).

Here, Plaintiff refers to an alleged wheelchair accommodation request for the first time in her opposition and rigorously argues that the Defendant's failure to provide her a wheelchair accommodation also constitutes an ADA violation. (ECF No. 15 at 8). However, Plaintiff does not include any reference to a wheelchair request in the Complaint. *See* (ECF No. 1). Plaintiff does not even plead that she made certain other accommodation requests in addition to telework. *Id.* Moreover, the record is devoid of any documents aside form Plaintiff's own affidavit that reference a wheelchair, including medical records. Therefore, the Court declines to consider the wheelchair argument as a basis for Plaintiff's failure to accommodate claim at this juncture. *Burroughs*, 2024 WL 3832346, at *1 n.4. Should Plaintiff wish to pursue a claim predicated on Defendant's alleged denial of a wheelchair allegation, she must follow the procedures set forth under Rules 8 or 15 of the Federal Rules of Civil Procedure. *Zachair*, 965 F. Supp. At 748 n.4.

---

[3] In *Schmees v. HC1.Com, Inc.,* the Seventh Circuit recognized that the purported prohibition against considering additional claims in a brief stems from *Chambliss v. Coca-Cola Bottling Corp*., 274 F.Supp. 401 (E.D. Tenn. 1967), which concluded "only that 'the practice of amending by brief seems inappropriate.'" *Schmees*, 77 F.4th at 489 (quoting *Chambliss*, 274 F.Supp. at 409). Thus, the court indicated despite wholehearted agreement with the *Chambliss* holding, "inappropriate and impermissible are not synonyms." *Id.* (collecting cases). In so doing, the *Schmees* court opened a door to rare scenarios in which constructive motions for leave to amend may be implicated by brief arguments. *Id.; see also Adams v. C3 Pipeline Construction Inc.*, 30 F.4th 943, 971 (10th Cir. 2021) ("Our cases interpret the inclusion of new allegations in a response to a motion for summary judgment as a potential request to amend the complaint."). After thorough review, courts in the Fourth Circuit have not yet considered the *Schmees* or *Adams* holding. However, many post-*Schmees* cases in this district still rely on language quoted from *Car Carriers, Inc.*, in support of the general rule against considering new factual allegations in a plaintiff's opposition. *E.g.*, *McDowell v. iCaddilus*, *Inc.*, Case No. MJM-22-3172, 2024 WL 2816054, at *1 n.2 (D. Md. May 30, 2024) (citing *Myland Lab'ys, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (4th Cir. 1991)); *Fagan v. U.S. Dep't of Health and Hum. Servs.*, Civil No. TJS-23-2095, 2025 WL 1837402, at *15 (D. Md. July 2, 2025).

**B.    Plaintiff's Failure to Accommodate Claim Fails as a Matter of Law Because Undisputed Evidence Shows Plaintiff was Accommodated with Medical Leave in a Job That Required an In-Office Presence She Could Not Fulfill.**

The ADA provides that "no covered entity shall discriminate against a qualified individual on the basis of disability…" 42 U.S.C. § 12112(a). Defendant argues Plaintiff's failure to accommodate claim fails as a matter of law because she "has not, and indeed cannot, make a showing that she could perform the essential functions of her administrative assistant position with the County Council if she was granted remote work accommodations."   (ECF No. 14-1 at 8). To that end, Plaintiff argues in a conclusory fashion that her essential job duties could be completed remotely.  (ECF No. 15 at 7).  In Plaintiff's affidavit, she indicates that (1) other employees in unspecified roles[4] have been allowed to perform telework and (2) "all of the essential duties listed could have been done remotely…I would have been able to perform all of the essential duties in my position." (ECF No. 15-4).  Defendant also argues that it had no obligation to provide telework as an accommodation because granting FMLA leave constitutes a reasonable accommodation in situations like Plaintiff's.  (ECF No. 14-1 at 12).

"To establish a prima facie case of failure to accommodate, a plaintiff must show: '(1) that she was an individual with a disability within the meaning of the statute; (2) that the employer had notice of her disability; (3) that with reasonable accommodation she could perform the essential functions of the position; (4) that the employer refused to make such accommodations.' " *Smith v. CSRA*, 12 F.4th 396, 414 (4th Cir. 2021) (quoting *Jacobs v. N.C. Admin. Off. Cts.*, 780 F.3d 562, 579 (4th Cir. 2015)); *Wilson v. Dollar General Corp.*, 717 F.3d 337, 345 (4th Cir. 2013). "In order to be reasonable, the accommodation must be effective (i.e., it must address the job-related difficulties presented by the employee's disability), and it must allow the employee to attain an

---

[4] The Complaint also fails to specify which employees worked remotely.  *See* (ECF No. 1).

'equal' level of achievement, opportunity, and participation that a non-disabled individual in the same position would be able to achieve." *Fleetwood v. Harford Sys. Inc.*, 380 F.Supp.2d 688, 699 (D.Md.2005) (citation omitted).  Thus, it is the Plaintiff's burden to (1) identify an accommodation and (2) prove that it is reasonable.  *Smith*, 12 F.4th at 414.

<ol>
<li>The Undisputed Evidence Shows Plaintiff Could Not Have Performed the Essential Functions of Her Job Via Telework Her Job Required an In Person Presence and Her Doctor Indicated She was Incapacitated During Her Recovery.</li>
</ol>

Under the ADA, essential functions are those "that bear more than a marginal relationship to the job at issue." *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 213 (4th Cir. 1994) (quoting *Chandler v. City of Dallas*, 2 F.3d 1385, 1393–94 (5th Cir. 1993)); *Jacobs*, 780 F.3d at 579–80.  A reasonable accommodation includes "modifications or adjustments to the work environment under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii).  As stated above, the "Plaintiff bears the burden of demonstrating that she could perform the essential functions of her job with reasonable accommodation."  *Tyndall*, 31 F.3d at 213.  Here, Plaintiff alleges full time telework would allow her to perform the essential functions of her job, without specifying in the Complaint or arguing in her brief how that would be the case or which tasks she could perform from home.

To that end, Courts have been reluctant to conclude in a non-pandemic setting that full-time telework is a reasonable accommodation.  *See, e.g.*, *Davis v. Lockheed Martin Operations Support, Inc.*, 84 F. Supp. 2d 707, 713 (D. Md. 2000) (recognizing that telework accommodations are only reasonable in "the unusual case where an employee can effectively perform all work-related duties at home" because "attendance at the work site is presumed to be an essential function of a job") (quoting *Tyndall*, 31 F.3d at 213); *Broussard v. Panetta*, No. CIV. CCB-11-3401, 2013

12

WL 45902, at *8 (D. Md. Jan. 2, 2013) (indicating presence at the worksite is an essential function absent unusual circumstances). Defendant correctly points out that "[i]n order to establish the essential functions of a position, the ADA requires the Court to look at ... [the] employer's judgment of the essential functions" and "the job description, if it was prepared prior to hire." (ECF No. 14-1 at 9) (citing 42 U.S.C. § 12111). Indeed, "if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111; *see also Elledge v. Lower's Home Centers, LLC*, 979 F.3d 1004, 1009 (4th Cir. 2020) ("[T]he decision about a position's essential functions belongs, in the first instance, to the employer; it accordingly merits 'considerable deference' from the courts."). "However, at the summary judgment stage, the employer's judgment will not be dispositive regarding whether a function is essential when evidence on the issue is 'mixed.'' *Kande v. Dimensions Health Corp.*, Case No.: GJH-18-2306, 2020 WL 7054771, at *10 (D. Md. Dec. 2, 2020) (citing *Feldman v. Olin Corp.*, 692 F.3d 748, 755 (7th Cir. 2012)).

After thorough review, it is unclear how Plaintiff believes she could have performed her job duties remotely. In support of her conclusory assertion that she could have done so, Plaintiff points to the COVID-19 pandemic. (ECF No. 15 at 8). However, the Court finds this argument unavailing, as the COVID-19 pandemic presented an unprecedented situation that required most employees to work from home during a global state of emergency. *See Davis*, 84 F. Supp. 2d 707, 713 (D. Md. 2000) (noting that in the Fourth Circuit, attendance at work is presumed to be an essential function "except in [an] unusual case"); *Broussard*, 2013 WL 45902, at *8. Plaintiff's doctor indicated would not be able to sit, stand, walk, drive, bend, stoop, twist, or couch for the months in which she underwent treatment for her ankle. (ECF No. 14-6). Plaintiff's doctor sent

"Plaintiff will be unable to return to work as of 11/19/24-01/07/25. The patient is unfit to work in the current job." (ECF No. 14-15). In her resignation letter, Plaintiff herself stated that she could not perform the "physical demands" of her job, stating, "[a]fter careful consideration and consultation with my healthcare team, I have come to the difficult decision that resigning is the best course of action for my health as I am unable to perform the physical demands of the current position." (ECF No. 14-20).

Plaintiff does not even plead, let alone describe facts in her brief, that explain which tasks she could perform from home or how her job duties were allocated day-to-day. *See* (ECF No. 1, 15); *see also Davis*, 84 F. Supp. 2d at 713 (D. Md. 2000); *Broussard*, 2013 WL 45902, at *8. By contrast, Defendant points to undisputed evidence of Plaintiff's job description, which clearly requires an in-person presence for setting up the physical technical equipment for the Council and board meetings, physically operating the Council Control Room, and greeting Council guests. (ECF No. 14-4 at 2). The job description also indicates such duties are "essential functions of the job." *Id.* Taking all inferences in the light most favorable to Plaintiff, it is conceivable that certain tasks like research, calendar maintenance, and other data-related tasks could be performed remotely. *See id.* Of course, where Defendant points to evidence that "it is impossible to complete all of [Plaintiff's] job duties remotely" and "85% of the tasks require in-person contact and an in-office presence…," such statements are not dispositive at the summary judgment stage. *Kande*, 2020 WL 7054771, at *10; (ECF Nos. 14-10, 14-11).

Even still, Plaintiff does not point to any facts that creates a genuine issue of material fact as to whether in-person tasks were an essential function of her job. She does not dispute that her job required her to interact with the board members and the public or to set up the board room. *See generally* (ECF No. 15). Moreover, she does not dispute that her own doctor told Defendant

that she was "unfit to work in the current job." (ECF No. 14-15). She expresses vague disagreement with the notion that she could not have performed the essential duties of her job, but she provides only speculative arguments about the COVID-19 pandemic and her conclusory assertion that she could have fulfilled all duties remotely. (ECF Nos. 1, 15-4). Based on the undisputed evidence available to the Court, there is no genuine dispute that Plaintiff's job required an in-person presence to perform at least some of her essential duties and could not be accommodated by full-time telework from November to January. *Davis*, 84 F. Supp. 2d at 713 (D. Md. 2000); *Broussard*, 2013 WL 45902, at *8. Plaintiff's conclusory and speculative statements to the contrary fail to create a genuine issue of material fact, even construing all inferences in the light most favorable to Plaintiff. Therefore, Plaintiff's failure to accommodate claim fails as a matter of law.

        2.    <u>Defendant Accommodated Plaintiff by way of Granting Plaintiff Leave Under the FMLA and Is Not Required to Grant a Specific Accommodation of a Plaintiff's Choosing.</u>

Even if a telework accommodation could be considered reasonable under these circumstances, the ultimate discretion to choose among reasonable accommodations rests with the employer. *See Reyazuddin v. Montgomery Cnty., Md.*, 789 F.3d 407, 416 (4th Cir. 2015); *Hankins v. The Gap, Inc.*, 84 F.3d 797, 800 (6th Cir.1996) ("[T]he employer providing the accommodation has the ultimate discretion to choose between effective accommodations and may choose the less expensive accommodation or the accommodation that is easier for it to provide.") (quoting EEOC Interpretive Guidance on Title I of the Americans with Disabilities Act, 29 C.F.R. pt. 1630 app. at 406 (2014)). The ADA authorizes unpaid leave as a reasonable accommodation under certain circumstances. 42 U.S.C. § 12111(9)(B) ("reasonable accommodation" may include "job restructuring…modified work schedules…and other similar accommodations."). Indeed,

Defendant correctly asserts that regulatory guidance for the ADA clarifies that "permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment" is an example of a reasonable accommodation. 29 C.F.R. pt. 1630 app. § 1630.2(o). Defendant points to *Hannah v. United Parcel Service, Inc.*, which is also instructive here. *Hannah v. United Parcel Service*, Inc., 72 F.4th 630, 637 (4th Cir. 2023). In *Hannah*, a delivery driver's injuries to his hip and buttocks precluded him from performing his job. *Id.* at 634. Instead of permitting the plaintiff to perform a paid position that did not require him to drive a delivery truck consistent with his accommodation request, the defendant placed him on an unpaid leave of absence until his injuries healed. *Id.* at 634. Despite the plaintiff's complaints that "he did not want medical leave," he provided "no authority as to why that accommodation was not a reasonable one in the circumstances." *Id.* Therefore, the Fourth Circuit held that a period of unpaid leave was a reasonable accommodation "where the disability that interferes with an employee's capacity to complete assigned tasks is temporary and there is reason to believe that a leave of absence will provide a period during which the employee will be able to recover and return to work." *Id.* at 637. Thus, the Fourth Circuit upheld the lower court's decision to grant summary judgment. *See id.*

Plaintiff's ankle surgery presents a scenario that falls squarely within *Hannah*. Indeed, Plaintiff' recovery, at the very least, interfered with her capacity to complete the in-person components of her job, and her doctor's notes provided notice of a finite duration of recover with a January 7, 2025, return to work date. (ECF Nos. 14-6, 14-7, 14-9). Similar to the *Hannah* plaintiff, Plaintiff here fails to point to any reason as to why granting her medical leave is an unreasonable accommodation for a temporary disability that precluded her from working on-site. *See* (ECF Nos. 1, 15). Plaintiff concedes that Defendant provided her a leave of absence and that she sought out and received FMLA leave. (ECF No. 1, 15); *Hannah*, 72 F.4th at 637. From what

the Court can discern, Plaintiff's position is much like that of the plaintiff in Hannah, who simply would have preferred a different accommodation of his choosing. *Id.* As Defendant points out, the *Hannah* court found that unpaid leave was a reasonable accommodation when the *Hannah* plaintiff did not apply for it and even objected to it. *Id.* By contrast, Plaintiff asked for leave and promptly received it. *See id.*; *see also Dieng v. Orkin, LLC*, Civil Action No. 21-cv-0482-LKG, 2025 WL 403794, at *9 (D. Md. Feb. 4, 2025) (granting summary judgment on a failure to accommodate claim when the defendant permitted the plaintiff to take unpaid leave for several months during an injury recovery period). Thus, based on the undisputed record, no reasonable jury could conclude that granting the FMLA leave Plaintiff requested instead of her telework request was a failure to accommodate. *See id.*

Therefore, the Motion to Dismiss, or in the alternative, for Summary Judgment under Count I[5] is GRANTED.

### C.    Plaintiff's ADA Claim Based on Disability Discrimination Fails Because She Was Not a Qualified Individual and There is No Evidence Suffered an Adverse Employment Decision Based on Her Disability.

"To establish a claim for disability discrimination under the ADA, a plaintiff must prove '(1) that she has a disability, (2) that she is a "qualified individual" for the employment in question, and (3) that [her employer] discharged her (or took other adverse employment action) because of her disability.'" *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 572 (4th Cir. 2015)   As an initial matter, *Fleetwood v. Harford Sys. Inc.*, explained, "[A] 'qualified individual with a disability'...can  perform  the essential functions of [her] job with  or  without  reasonable accommodation. 'Essential functions' are the fundamental job duties of the employment position

---

[5] "The MFEPA contains functionally identical prohibitions and is evaluated under the same framework as the Americans with Disabilities Act, 42 U.S.C. § 12112(a)." *Destiny Charity Rose Teel v. Md. Natural Treatment Solutions, LLC*, RDB-23-1694, 2024 WL 1075421, at *4 (D. Md. Mar. 12, 2024).

that the person with the disability holds or desires." *Fleetwood v. Harford Sys. Inc.*, 380 F. Supp. 2d 688, 698–99 (D. Md. 2005) (quoting 29 C.F.R. § 1630.2(n)(1)). Based on the reasoning above, Plaintiff's disability discrimination claim necessarily fails as a matter of law. *See supra* Section III.B.

However, even if Plaintiff was a qualified individual capable of performing the essential functions of her job with or without an accommodation, there is no evidence on the record—nor any Plaintiff could conceivably produce with discovery—that creates a genuine issue of material fact concerning (1) an adverse employment action or (2) that any adverse employment action constituted was based on her disability.

       1.    <u>There Is No Evidence Showing Plaintiff was Constructively Discharged.</u>

To establish a constructive discharge, "a plaintiff must show 'that [s]he was discriminated against by h[er] employer to the point where a reasonable person in h[er] position would have felt compelled to resign' and that she actually resigned." *Evans v. Int'l Paper Co*., 936 F.3d 183, 193 (4th Cir. 2019) (quoting *Green v. Brennan*, 578 U.S. 547, 136 S.Ct. 1769, 1777, 195 L.Ed.2d 44 (2016)). The conditions must go "beyond 'ordinary' discrimination." *Id.* (quoting *Penn. State Police v. Suders*, 542 U.S. 129, 147, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004)). Courts must consider whether the workplace was "so intolerable" that she was compelled to resign under an objective standard. *Heiko v. Colombo Savings Bank, F.S.B*, 434 F.3d 249, 262 (4th Cir. 2006). "In assessing intolerability, the frequency of the conditions at issue is important." *Evans*, 936 F.3d at 193. Thus, "[t]he more continuous the conduct, the more likely it will establish the required intolerability. On the other hand, when the conduct is isolated or infrequent, it is less likely to establish the requisite intolerability." *Id.*

In an effort to meet this high bar, Plaintiff argues "Defendant constructively discharged the Plaintiff by insisting that the Plaintiff remain on unpaid leave instead of granting Plaintiff a reasonable accommodation." (ECF No. 15 at 13). She contends, "an indefinite state of unpaid leave is an intolerable condition." *Id.* Defendant retorts,

> Here, there were merely thirty-two (32) business days (excluding weekends and County holidays) between November 19, 2024, when Plaintiff's FMLA leave began and January 9, 2025, when Plaintiff resigned…In this short amount of time, the County made good-faith attempts to analyze whether Plaintiff should be allowed to telework full time in lieu of the continuous FMLA leave, which Plaintiff previously requested and received. As discussed *supra*, the County ultimately declined to provide Plaintiff with telework accommodation due to 1) Plaintiff's doctor's assessment, which unequivocally confirmed Plaintiff's total incapacitation and 2) Plaintiff's essential duties, which were public facing and required in-person attendance.

(ECF No. 18 at 12).

Examples of constructive discharge cases make clear that there is no evidentiary support on the record necessary to meet the high bar to prove constructive discharge. In *Williams v. Giant Food, Inc.*, the Fourth Circuit concluded that a plaintiff was not constructively discharged when she alleged her supervisors yelled at her, told her she was a poor manager, gave her poor performance evaluations, chastised her in front of customers, and required her to work with an injured back. *Williams v. Giant Food, Inc.*, 370 F.3d 423, 434 (4th Cir. 2004). Affirming the lower court's decision to grant summary judgment on that issue, the court reasoned, "'[d]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign.'" *Id.* (quoting *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994)); *see also Brady v. Bd. of Educ. of Prince George's Cnty.*, 222 F.Supp.3d 459, 476 (D. Md. 2016) (concluding that the circumstances there were no more intolerable than those in *Williams* on an objective standard inquiry). In *Bowen v. Maryland Department of Public Safety and Correctional Services*, this Court dismissed a Title VII claim

based on constructive discharge when a plaintiff alleged her supervisor "spoke to her in a 'belittling manner,' yelled at her, told an Agent Assistant not to assist [the plaintiff] in entering certain documents, and began to require [the plaintiff] to meet with her once a day." *Bowen v. Md. Dep't of Pub. Safety and Corr. Servs.*, Civil Action No. RDB-17-1571, 2018 WL 1784463, at *9 (D. Md. Apr. 12, 2028) (reasoning that "[t]hese conditions do not amount to the 'high standard' of constructive discharge"); *Harrison v. Gov't Emp. Ins. Co.*, Civil Action No. PX-19-1235, 2021 WL 391700, at *8 (D. Md. Feb. 4, 2021) (granting summary judgment on an ADA constructive discharge claim when the evidence showed that the defendant granted the plaintiff's request to work remotely before she claimed telework constituted an intolerable working environment and the plaintiff later sought to celebrate her retirement, a fact the Court indicated "cannot be squared" with an allegation of intolerable working conditions).

Against that backdrop, it can hardly be stated that granting FMLA leave *as requested by Plaintiff herself* constitutes an "intolerable condition" under an objective standard. Plaintiff applied for and received leave. (ECF No. 14-6). Plaintiff points to no evidence of "intolerable conditions" other than the County's approval of the leave for which she applied. *See generally* (ECF No. 1). Moreover, the Complaint fails to allege any other conduct that could be considered so intolerable such that Plaintiff was forced to resign. *See Williams,* 370 F.3d at 434; *Bowen*, 2018 WL 1784463, at *9; *Brady*, 222 F.Supp.3d at 476. Looking at the face of Plaintiff's resignation email, she indicated she was leaving "due to ongoing health concerns resulting from [her] injury" and she was "unable to perform the physical demands of the current position." (ECF No. 14-20). This is hardly the kind of resignation email that can be squared with Plaintiff's allegation that she was forced into intolerable conditions by way of the medical leave she asked for or that Defendant took discriminatory action against her. *Harrison*, 2021 WL 391700, at *8. Further, because the

Defendant granted Plaintiff's leave request, the record and Complaint are devoid of any facts showing any such conduct was based on Plaintiff's disability and not based on her application for leave.  Even construing the evidence in the light most favorable to plaintiff, no reasonable jury could find that granting a request for less than two months of medical leave meets the high bar to prevail on a constructive discharge claim.  *Williams,* 370 F.3d at 434; *Bowen*, 2018 WL 1784463, at *9; *Harrison*, 2021 WL 391700, at *8.

Therefore, Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment (ECF No. 14) is GRANTED with respect to Count II.

### D.     Plaintiff's Rehabilitation Act Claim Fails Because There is No Evidence that Defendant Retaliated Against Plaintiff on the Basis of Her Disability.[6]

In determining whether the Rehabilitation Act has been violated, courts apply the same standards as under the Americans with Disabilities Act.  29 U.S.C. § 794(d); *see also Doe v. U. of Maryland Med. System Corp.*, 50 F.3d 1261, 1265 n.9 (4th Cir. 1995) (explaining that where the Rehabilitation Act and ADA employ language that "is substantially the same, we apply the same analysis to both").  Thus, Plaintiff may "either offer sufficient direct and indirect evidence of retaliation, or proceed under a burden-shifting method." *Jacobs v. N.C. Admin. Off. Cts.*, 780 F.3d 562, 577 (4th Cir. 2015) (quoting *Rhoads v. FDIC,* 257 F.3d 373, 391 (4th Cir.2001)). "Whether a plaintiff proceeds by direct evidence or *McDonnell Douglas* burden-shifting, she must show (i) that she engaged in protected activity and, (ii) because of this, (iii) her employer took an adverse employment action against her."  *Id.* When a plaintiff makes a prima facie case of disability discrimination, "the burden then shifts to the defendant to produce evidence

---

[6] In Defendant's initial Motion to Dismiss brief (ECF No. 14-1), Defendant urges the Court to dismiss the Rehabilitation Act claim based on Plaintiff's failure to exhaust administrate remedies. (ECF No. 14-1 at 7). However, Defendant concedes in its reply brief that no such requirement exists for non-federal employees.  (ECF No. 18 at 13) (citing *Magness v. Harford Cnty.*, Civil No. ELH-16-2970, 2018 WL 1505792, at *15) (D. Md. Mar. 27, 2018)).  Thus, the Court disregards the administrative exhaustion argument.

that the defendant acted with a legitimate, nondiscriminatory reason." *Equal Emp. Opportunity Comm'n v. Optimal Sols. & Techs., Inc.,* 422 F. Supp. 3d 1037, 1042-43 (D. Md. 2019). "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted." *Jennings v. Frostburg State Univ.*, 679 F. Supp. 3d 240, 272 (D. Md. 2023). Thereafter, "the burden shifts back to the plaintiff to show that the proffered legitimate reason was mere pretext." *Optimal Sols. & Techs., Inc.*, 422 F. Supp. 3d at 1043.

Based on the analysis of Plaintiff's ADA claim, there is no evidence to show Plaintiff was (1) a qualified individual or (2) that there was any adverse action given the undisputed evidence of her job description, doctor's note, and resignation letter. *Id.* Without any evidence of an adverse action, the record lacks any evidence that can possibly support an inference of unlawful discrimination "because of" a disability. *See id.* at 1042. Based on the analysis above, no reasonable jury could find in favor of Plaintiff as a matter of law.

Therefore, Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment is GRANTED under Count III.

## IV.    CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss (ECF No. 14) is GRANTED, and summary judgment is hereby entered in favor of Defendant. The Clerk is directed to close the case.

Date: January 13, 2026                           _____/s/_____
                                                                            J. Mark Coulson
                                                                            United States Magistrate Judge